1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   PAMELA IRENE MOORE,

11          Plaintiff,                         No. 2:10-cv-02477 KJN

12      v.

13   MICHAEL J. ASTRUE,
     Commissioner of Social Security,
14
            Defendant.                         <u>ORDER</u>
15   _____/

16          Plaintiff, who is represented by counsel, seeks judicial review of a final decision

17   of the Commissioner of Social Security ("Commissioner" or "defendant") denying plaintiff's

18   applications for Disability Insurance Benefits under Title II of the Social Security Act ("Act")

19   and Supplemental Security Income benefits under Title XVI of the Act.[1]  In her motion for

20   summary judgment, plaintiff contends that the administrative law judge ("ALJ") in this case

21   erred: (1) by discrediting the findings of plaintiff's treating physician, Dr. Borgquist, and by

22   "discrediting the diagnosis of fibromyalgia;" (2) by finding that plaintiff "only suffers from

23   depression and mild social functioning limitations despite consistent diagnoses of panic disorder

24   _____

25      [1] This case was referred to the undersigned pursuant to Eastern District of California Local
     Rule 302(c)(15) and 28 U.S.C. § 636(c), and both parties voluntarily consented (Dkt. Nos. 7, 10) to
     proceed before a United States Magistrate Judge.  28 U.S.C. § 636(c)(1); Fed. R. Civ. P. 73; E. Dist.
26   Local Rule 301.

1  with agoraphobia"; and (3) by failing "to incorporate specific limitations" arising from

2  "moderate" limitations in concentration, persistence, and pace into the hypothetical question

3  posed to the vocational expert ("VE"). (See generally Pl.'s Mot. for Summ. J., Dkt. No. 15 at 1.)

4  Defendant filed an opposition to plaintiff's motion and a cross-motion for summary judgment.

5  (Def.'s Opp'n & Cross-Motion for Summ. J., Dkt. No. 18.) Plaintiff filed a reply memorandum

6  in support of her motion. (Pl.'s Reply, Dkt. No. 21.) For the reasons stated below, the court

7  grants plaintiff's motion for summary judgment in part and denies the Commissioner's cross-

8  motion for summary judgment.

9  I.    BACKGROUND[2]

10        On March 18, 2008, plaintiff filed applications for Supplemental Security Income

11  and Disability Insurance Benefits, both of which alleged a disability onset date of April 1, 2007.

12  (Admin. Record ("AR") 129-33; 137-43.) The Social Security Administration denied plaintiff's

13  application initially on August 28, 2008, and upon reconsideration on October 28, 2008. (AR

14  73-83.) Plaintiff requested a hearing before an ALJ, and the ALJ conducted a hearing regarding

15  plaintiff's claim on January 13, 2010. (AR 27-57, 84-87.) Plaintiff was represented by counsel

16  at the hearing and testified. A vocational expert, Mr. David Dettmer, also testified at the hearing.

17  (AR 48-55.)

18        In a written decision dated February 12, 2010, the ALJ denied plaintiff's

19  applications for benefits based on a finding that, while plaintiff was incapable of performing past

20  relevant work as a secretary, plaintiff was indeed "capable of making a successful adjustment to

21  other work that exists in significant numbers in the national economy."[3] (AR 21.) The ALJ's

22

23        [2] Because the parties are familiar with the factual background of this case, including
24  plaintiff's medical history, the undersigned does not exhaustively relate those facts here. The facts
    related to plaintiff's impairments and medical history will be addressed insofar as they are relevant
    to the issues presented by the parties' respective motions.

25

26        [3] Disability Insurance Benefits are paid to disabled persons who have contributed to the
    Social Security program, 42 U.S.C. §§ 401 et seq. Generally speaking, Supplemental Security

1   decision became the final decision of the Commissioner when the Appeals Council denied

2   plaintiff's request for review.  (AR 1-5.)  Plaintiff subsequently filed this action.

3         B.      Summary of the ALJ's Findings

4               The ALJ conducted the required five-step evaluation and concluded that plaintiff

5   was not disabled within the meaning of the Act.  At step one, the ALJ found that plaintiff had not

6   engaged in substantial gainful employment since April 1, 2007, the alleged date of onset of

7   disability.  (AR 14.)  At step two, the ALJ concluded that plaintiff had the "severe" impairments

8   of: "degenerative disc disease of the lumbar spine, depression, and obesity."  (AR 14.)  At step

9   _____

10  Income is paid to disabled persons with low income.  42 U.S.C. §§ 1382 et seq.  Under both benefit schemes, the term "disability" is defined, in part, as an "inability to engage in any substantial gainful activity" due to "any medically determinable physical or mental impairment which can be expected

11  to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A five-step sequential evaluation

12  governs eligibility for benefits.  See 20 C.F.R. §§ 404.1520, 404.1571-1576, 416.920, 416.971-976; see also Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The Ninth Circuit Court of Appeals has

13  summarized the sequential evaluation as follows:

14                Step one:  Is the claimant engaging in substantial gainful
                  activity?  If so, the claimant is found not disabled.  If not, proceed to

15                step two.

16                Step two:  Does the claimant have a "severe" impairment?  If
                  so, proceed to step three.  If not, then a finding of not disabled is

17                appropriate.

18                Step three:  Does the claimant's impairment or combination
                  of impairments meet or equal an impairment listed in 20 C.F.R., Pt.

19                404, Subpt. P, App.1?  If so, the claimant is automatically determined
                  disabled.  If not, proceed to step four.

20
                  Step four:  Is the claimant capable of performing his past

21                work?  If so, the claimant is not disabled.  If not, proceed to step five.

22                Step five:  Does the claimant have the residual functional
                  capacity to perform any other work?  If so, the claimant is not

23                disabled.  If not, the claimant is disabled.

24  Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

25      The claimant bears the burden of proof in the first four steps of the sequential evaluation
    process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential

26  evaluation process proceeds to step five.  Id.

three, the ALJ determined that plaintiff did not have an impairment or combination of

impairments that met or medically equaled one of the impairments listed in the applicable

regulations.  (Id. at 15 (citing 20 C.F.R. pt. 404, subpt. P, app.1).)

Prior to reaching step four of the analysis, the ALJ determined plaintiff's residual

functional capacity ("RFC") as follows:

> [T]he claimant has the residual functional capacity to perform a wide
> range of medium work as defined in 20 CFR 404.1567(c) and 416.967(c)
> except that she can lift 35 pounds occasionally and 20 pounds frequently.
> She is capable of standing and walking at least six hours in an eight hour
> work day and is also capable of sitting at least six hours [in an] eight hour
> workday.  She cannot work at heights or around hazardous, moving
> machinery.  She is mentally limited to work requiring simple instructions.

(AR 15-16, 20.)

In assessing plaintiff's RFC, the ALJ addressed plaintiff's testimony and found

that plaintiff was not credible to the extent that her testimony concerning the intensity,

persistence and limiting effects of her symptoms conflicted with the ALJ's RFC assessment.

(AR 17.)  The ALJ also addressed the medical evidence, giving "great weight" to the opinion of

consultative examiner Dr. Cesar Duclair (AR 17), giving "less weight" to the opinion of treating

physician Dr. Warren Borgquist (AR 18), giving "great weight" to the opinion of treating

psychiatrist Dr. Bennett Garner dated October 2007 (AR 19), giving "very little weight" to the

opinion of treating psychiatrist Dr. John Champlin (id.), giving "great weight" to the opinion of

Dr. Manolito Castillo dated July 2008, and giving "great weight" to the opinion of Dr. Ikawa, the

consulting psychiatrist (AR 20).

Having assessed plaintiff's RFC, the ALJ found at step four that given plaintiff's

limitations, plaintiff "is unable to perform any past relevant work."  (Id.)  At step five, the ALJ

found that "considering the claimant's age, education, work experience, and residual functional

capacity, there are jobs that exist in significant numbers in the national economy that the claimant

can perform."  (AR 21.)  The ALJ asked the vocational expert whether jobs exist in the national

economy "for an individual with the claimant's age, education, work experience, and residual

4

1  functional capacity." (Id.)  The ALJ relied on the vocational expert's testimony, and found that

2  plaintiff could perform jobs such as cashier, mail clerk, and office helper.  (Id.)  Because the ALJ

3  found that plaintiff could perform such work, plaintiff is "not disabled."  (AR 21-22.)

4  II.    STANDARDS OF REVIEW

5           The court reviews the Commissioner's decision to determine whether it is (1) free

6  of legal error, and (2) supported by substantial evidence in the record as a whole.  Bruce v.

7  Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009); accord Vernoff v. Astrue, 568 F.3d 1102, 1105 (9th

8  Cir. 2009).  This standard of review has been described as "highly deferential."  Valentine v.

9  Comm'r of Soc. Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009).  "'Substantial evidence means

10  more than a mere scintilla but less than a preponderance; it is such relevant evidence as a

11  reasonable mind might accept as adequate to support a conclusion." Bray v. Comm'r of Soc.

12  Sec. Admin., 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting Andrews v. Shalala, 53 F.3d 1035,

13  1039 (9th Cir. 1995)); accord Valentine, 574 F.3d at 690.  "The ALJ is responsible for

14  determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities."

15  Andrews, 53 F.3d at 1039; see also Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008)

16  ("[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence.").

17  Findings of fact that are supported by substantial evidence are conclusive.  42 U.S.C. § 405(g);

18  see also McCarthy v. Apfel, 221 F.3d 1119, 1125 (9th Cir. 2000).  "Where the evidence as a

19  whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the

20  ALJ's." Bray, 554 F.3d at 1222; see also Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198

21  (9th Cir. 2008) ("'Where evidence is susceptible to more than one rational interpretation,' the

22  ALJ's decision should be upheld.") (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir.

23  2005)).  However, the court "must consider the entire record as a whole and may not affirm

24  simply by isolating a 'specific quantum of supporting evidence.'" Ryan, 528 F.3d at 1198

25  (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)); accord Lingenfelter v.

26  Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007).  "To determine whether substantial evidence

1  supports the ALJ's decision, [a court] review[s] the administrative record as a whole, weighing

2  both the evidence that supports and that which detracts from the ALJ's conclusion." Andrews,

3  53 F.3d at 1039.

4          The court's review is constrained to the reasons asserted by the ALJ in the ALJ's

5  decision. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) ("We review only the reasons

6  provided by the ALJ in the disability determination and may not affirm the ALJ on a ground

7  upon which he did not rely."); accord Tommasetti, 533 F.3d at 1039 n.2 (declining to review

8  reasons provided by the district court in support of the ALJ's credibility decision that were not

9  "expressly relied on" by the ALJ during the administrative proceedings); accord Pinto v.

10  Massanari, 249 F.3d 840, 847 (9th Cir. 2001) (noting that the Court "cannot affirm the decision

11  of an agency on a ground that the agency did not invoke in making its decision"); Gonzalez v.

12  Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1990) ("[W]e are wary of speculating about the basis of

13  the ALJ's conclusion – especially when his opinion indicates that the conclusion may have been

14  based exclusively upon an improper reason."); Barbato v. Comm'r of Soc. Sec. Admin., 923 F.

15  Supp. 1273, 1276 n.2 (C.D. Cal. 1996) (remand is appropriate when a decision does not

16  adequately explain how a decision was reached, "[a]nd that is so even if [the Commissioner] can

17  offer proper post hoc explanations for such unexplained conclusions," because "the

18  Commissioner's decision must stand or fall with the reasons set forth in the ALJ's decision, as

19  adopted by the Appeals Council") (citation omitted).

20          Harmless error exists when it is clear from the record that the ALJ's error was

21  inconsequential to the ultimate non-disability determination. Tommasetti, 533 F.3d at 1038

22  (citations and internal quotation marks omitted); see also Lewis v. Astrue, 498 F.3d 909, 911 (9th

23  Cir. 2007) (error in finding an impairment non-severe at step two was harmless when ALJ

24  accounted for resulting limitations later in sequential evaluation process). In other words, the

25  court will not reverse the Commissioner's decision if it is based on harmless error, which exists

26  only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate

1   nondisability determination.'" <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 885 (9th Cir. 2006)

2   (quoting <u>Stout v. Comm'r</u>, 454 F.3d 1050, 1055 (9th Cir. 2006)).

3         "If additional proceedings can remedy defects in the original administrative

4   proceeding, a social security case should be remanded." <u>Marcia v. Sullivan</u>, 900 F.2d 172, 176

5   (9th Cir. 1990) (quoting <u>Lewin v. Schweiker</u>, 654 F.2d 631, 635 (9th Cir. 1981)). "Where the

6   Secretary is in a better position than this court to evaluate the evidence, remand is appropriate."

7   <u>Id.</u> (citing <u>McAllister v. Sullivan</u>, 888 F.2d 599, 603 (9th Cir. 1989)).

8   III.    <u>DISCUSSION</u>

9       A.    <u>The ALJ Permissibly Discounted Dr. Borgquist's Opinion</u>

10        Plaintiff contends that the ALJ erred in discounting Dr. Borgquist's opinion,

11  which led the ALJ to erroneously conclude that plaintiff did not suffer from fibromyalgia.  (Pl.'s

12  Mot. for Summ. J. at 11-15.)  Specifically, plaintiff argues that the ALJ "failed to articulate

13  specific and legitimate reasons for not crediting" Dr. Borgquist's diagnosis of fibromyalgia.

14  (Pl.'s Mot. for Summ. J. at 14.)  Plaintiff's argument is not well-taken.

15        The medical opinions of three types of medical sources are recognized in social

16  security cases: "(1) those who treat the claimant (treating physicians); (2) those who examine but

17  do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the

18  claimant (nonexamining physicians)." <u>Lester</u>, 81 F.3d at 830.  Generally, a treating physician's

19  opinion should be accorded more weight than opinions of doctors who did not treat the claimant,

20  and an examining physician's opinion is entitled to greater weight than a non-examining

21  physician's opinion.  <u>Id.</u>  Where a treating or examining physician's opinion is uncontradicted by

22  another doctor, the Commissioner must provide "clear and convincing" reasons for rejecting the

23  treating physician's ultimate conclusions.  <u>Id.</u>  If the treating or examining doctor's medical

24  opinion is contradicted by another doctor, the Commissioner must provide "specific and

25  legitimate" reasons for rejecting that medical opinion, and those reasons must be supported by

26  substantial evidence in the record.  <u>Id.</u> at 830-31; <u>accord</u> <u>Valentine</u>, 574 F.3d at 692.  "'The ALJ

1   can meet this burden by setting out a detailed and thorough summary of the facts and conflicting

2   clinical evidence, stating [her] interpretation thereof, and making findings.'" Tommasetti, 533

3   F.3d at 1041 (modification in original) (quoting Magallanes v. Bowen, 881 F.2d 747, 751 (9th

4   Cir. 1989)).

5           Here, the ALJ considered Dr. Borgquist's opinions regarding plaintiff's functional

6   limitations and fibromyalgia and provided specific, legitimate reasons for discounting those

7   opinions in light of conflicting evidence.  See Lester, 81 F.3d at 830; Valentine, 574 F.3d at 692;

8   Tommasetti, 533 F.3d at 1041.  Here, the ALJ gave Dr. Borgquist's opinion "less weight"

9   because:

> Dr. Borgquist . . . does not appear to be a rheumatologist or
> other specialist familiar with diagnosing fibromyalgia, and
> he has not referred the claimant to such a specialist.  The
> claimant has not undergone physical therapy or been
> referred to a pain clinic, and injections of cortisone or
> Novocain do not appear to have been offered.  Dr.
> Borgquist also does not appear to have run other diagnostic
> tests to see if there are other causes for the claimant's
> reported pain.  Finally, when the consulting examiner
> examined the claimant, the claimant did not report a
> significant number of painful areas that could be considered
> trigger points and had few symptoms, objective or
> otherwise, on examination.  Thus, I give less weight to this
> opinion, as it is not adequately documented and is not
> consistent with the claimant's treatment records and other
> substantial evidence of record.

19   (AR 18.)  The ALJ also discounted Dr. Borgquist's opinion after having determined that plaintiff

20   was not credible regarding the intensity, persistence, and limiting effects of her symptoms.  (AR

21   17.)[4]

22           The ALJ also discounted the opinion of Dr. Borgquist in light of a conflicting

23   opinion from Dr. Duclair, a consulting examiner.  The ALJ gave "great weight" to the majority of

---

[4]  Among several other reasons for discounting plaintiff's credibility, the ALJ explained that "although claimant's treating physician advocates that the claimant suffers from fibromyalgia, the claimant did not mention fibromyalgia to the consulting examiner [Dr. Duclair], and the examination did not reveal any trigger points" consistent with fibromyalgia.  (AR 17.)

1  the opinion of Dr. Duclair. (AR 17-18.)  The ALJ explained that Dr. Duclair examined plaintiff

2  and opined that plaintiff's coordination, station and gait were normal despite her obesity, that

3  plaintiff's cervical range of motion was normal, that plaintiff has no limitations in her ability to

4  sit, stand, or walk, that plaintiff can lift and carry 20 pounds frequently and 35 pounds

5  occasionally, and that plaintiff can occasionally crouch, with no other limitations.  (AR 17; 325-

6  27.)  The ALJ ultimately gave "great weight" to Dr. Duclair's opinion because "it is consistent

7  with both the objective findings on examination and the treatment records."  (AR 17.)

8          1.    *Fibromyalgia*

9          Fibromyalgia has been defined as "a rheumatic disease that causes inflammation

10  of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue."

11  Benecke v. Barnhart, 379 F.3d 587, 589-90 (9th Cir. 2004) (citing authorities).  Common

12  symptoms "include chronic pain throughout the body, multiple tender points, fatigue, stiffness,

13  and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue associated

14  with this disease." Id. (citing authorities).

15          Plaintiff correctly argues that "the diagnosis and treatment of fibromyalgia is

16  associated with unique evidentiary issues."  (Pl.'s Mot. for Summ. J. at 12 (citing out-of-circuit

17  cases and Rollins v. Massanari, 261 F.3d 853, 855 (9th Cir. 2001).)  In Rollins, the Court of

18  Appeals explained that "[o]ne of the most striking aspects of [fibromyalgia] is the absence of

19  symptoms;" however, that court also noted that "[t]he most clear objective medical indication of

20  fibromyalgia is tenderness at at least eleven of eighteen specific points on the body." Rollins,

21  261 F.3d at 863. Thus, there *can* be objective medical indications of fibromyalgia — i.e., through

22  finding tender points upon a physical exam — and here, the ALJ was entitled to consider the fact

23  that physical examinations of plaintiff did not consistently reveal these points.  (AR 17 (noting

24  plaintiff's "examination did not reveal any trigger points").)  Similarly, while fibromyalgia

25  presents unique evidentiary issues, every disability claimant with symptoms of fibromyalgia is

26  ////

not automatically entitled to benefits simply due to the difficulty of "proving" fibromyalgia.[5]

Instead, if the disease can be "diagnosed entirely on the basis of patients' reports of pain and

other symptoms," Benecke, 379 F.3d at 590, a plaintiff's credibility is critical in such cases.  As

discussed above, here the ALJ discounted plaintiff's credibility concerning the intensity,

persistence and limiting effects of her symptoms.  Plaintiff has not challenged the ALJ's adverse

credibility determination.[6]

Plaintiff also correctly states that in fibromyalgia cases, a treating doctor's

diagnosis "may be based purely on a patient's reports of pain and other symptoms."  (Pl.'s Mot.

for Summ. J. at 12 (citing Benecke, 379 F.3d at 590).)  Here, however, the ALJ determined that

plaintiff's reports of pain and other symptoms were *not credible*[7] — again, a finding plaintiff has

not challenged — and gave various specific reasons for that finding grounded in substantial

evidence.  (AR 17.)  Thus, the ALJ gave less weight to Dr. Borgquist's opinion in part because it

was based upon plaintiff's less-than-credible testimony regarding intensity, persistence and

limiting effects of her symptoms.  See Tommasetti, 533 F.3d at 1041 ("An ALJ may reject a

treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have

been properly discounted as incredible.").  Accordingly, while in some fibromyalgia cases a

treating physician's opinion "may be based purely on a patient's reports of pain and other

---

[5]  A diagnosis of fibromyalgia does not absolve a claimant from proving she is disabled under the terms of the Social Security Act, i.e., demonstrating with clinically acceptable medical and diagnostic tests that she cannot engage in any substantial gainful activity.  42 U.S.C. § 423(d)(5)(A) ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability"); 20 C.F.R. § 404.1514 ("We need specific medical evidence to determine whether you are disabled . . . You are responsible for providing that evidence.")

[6]  In her reply memorandum, plaintiff clarifies that she "does not concede that the ALJ properly analyzed . . . her credibility," (Pl.'s Reply at 2); however, plaintiff's moving papers do not present the argument that the ALJ erred in his credibility determination as to plaintiff.  Plaintiff also does not substantively argue the issue of plaintiff's credibility within her Reply memorandum.  The undersigned will not consider arguments raised for the first time in reply briefing.

[7]  (See AR 17 (describing various inconsistencies in plaintiff's statements and behavior and plaintiff's failure to seek "consistent medical treatment" and lack of "longitudinal treatment records" confirming plaintiff's symptoms).)

symptoms," (Pl.'s Mot. for Summ. J. at 12), given the ALJ's adequately-supported (and unchallenged) adverse credibility determination as to plaintiff, this was not such a case.

Plaintiff also argues that the ALJ improperly substituted his own opinion for the findings and opinions of Dr. Borgquist. (Pl.'s Mot. for Summ. J. at 11 (citing out-of-circuit cases and Benecke, 379 F.3d at 594.) In Benecke, the Court of Appeals held that the ALJ erred by rejecting treating physicians' diagnoses of fibromyalgia *solely* because he did not believe in fibromyalgia.[8] Benecke, 379 F.3d at 594. The court in Benecke held that "sheer disbelief [in fibromyalgia] is no substitute for substantial evidence." Id.

Here, contrary to the ALJ's decision in Benecke, the ALJ did not express a blanket disbelief in fibromyalgia; instead, as excerpted above, he stated specific reasons for discounting Dr. Borgquist's opinion, and identified specific evidence in the record supporting those reasons. (AR 17-18.) For instance, the ALJ discounted Dr. Borgquist's opinion in light of specific shortcomings in that opinion (such as Dr. Borgquist's lack of specialization in fibromyalgia, and his failure to refer plaintiff to a specialist, pain clinic, and/or offer her injections for pain), as well as a determination that plaintiff's testimony regarding the intensity, persistence and limiting effects of her symptoms was not credible, as well as a determination that the competing opinion from Dr. Duclair was more consistent with objective examination findings and the treatment records. (AR 17-18.) Even though plaintiff argues that Dr. Borgquist conducted sufficient testing and made accurate diagnoses, an ALJ's decision will be upheld where the "evidence is susceptible to more than one rational interpretation" and where the

---

[8] In Benecke, "[t]he ALJ expressed his skepticism at length during the hearing. For example, the ALJ asserted that only one doctor was 'really saying the fibromyalgia.' [sic] After Benecke's counsel pointed out that several doctors diagnosed Benecke with fibromyalgia, the ALJ asked, 'what on earth is that based on? I mean, there's no – I mean, how am I suppose [sic] to sit up here and listen to doctors tell me that there is nothing physical that they can find, yet she's so restricted . . . [?] I just don't find that credible. . . . I'm not seeing anything from the physical that would in any way justify those conclusions from the Rheumatologist other than trying to help the claimant get disability . . . . There's just the paucity of any objective findings whatsoever. . . . I mean, there was almost like a really buying [sic] into the syndrome in a way." Benecke, 379 F.3d at 594 n.3.

1    decision is supported by one such rational interpretation.  See Orn, 495 F.3d at 630.  The ALJ's

2    interpretation of Dr. Borquist's opinion was rational, and plaintiff has not shown that the ALJ

3    blindly "substituted his opinion" for Dr. Borquist's.

4           2.      *Treating Physician's Opinion Contradicted By Examining Physician's*
                    *Opinion*
5

6           Recognizing that the ALJ discounted Dr. Borquist's opinion in favor of Dr.

7    Duclair's contradictory opinion, plaintiff attacks Dr. Duclair's opinion.  Plaintiff argues that the

8    ALJ improperly "relied on the lack of diagnosis of fibromyalgia by the consultative examiner Dr.

9    Duclair, "even though Dr. Duclair literally only reviewed a handful of progress notes . . . and

10   never even reviewed Dr. Borquist's opinions or progress notes."  (Pl.'s Mot. for Summ. J. at

11   13.)  Contrary to plaintiff's characterization, Dr. Duclair did not merely review a "handful" of

12   notes — he also physically examined plaintiff.  (AR 17.)  The ALJ was entitled to give weight to

13   Dr. Duclair's opinions arising from that physical exam.  (AR 17-18.)  The fact that Dr. Duclair

14   did not specifically review Dr. Borquist's notes before rendering his opinion does not mean that

15   Dr. Duclair's opinion is necessarily entitled to less weight.  Plaintiff has not cited authorities

16   suggesting that an examining physician *must* review all of a treating physician's notes in order

17   for the examining physician's opinion to be compelling.  Moreover, in giving weight to Dr.

18   Duclair's opinion, the ALJ was persuaded by the fact that Dr. Duclair's examination of plaintiff

19   did not reveal a significant number of painful areas or trigger points.  (AR 18.)  "[W]hen an

20   examining physician provides 'independent clinical findings that differ from the findings of the

21   treating physician,' such findings are 'substantial evidence'."  Orn, 495 F.3d at 632-33 (internal

22   citations omitted).  Plaintiff has not shown that the ALJ erred in giving weight to Dr. Duclair's

23   opinion.

24          3.      *Physician's Specialization*

25          Plaintiff also argues that "Dr. Duclair is not a rheumatologist so there is no reason

26   why the ALJ should be justified in discrediting the treating source because he is not a

12

1   rheumatologist but then turn around and credit a one-shot consultative examiner who did not

2   even have a complete record before him." (Pl.'s Mot. for Summ. J. at 13.)  While plaintiff is

3   correct that neither Dr. Borgquist nor Dr. Duclair specialize in fibromyalgia, plaintiff is incorrect

4   that the ALJ could not discount Dr. Borgquist's opinion in part due to lack of specialization and

5   instead give weight to the opinion of another non-specialist.  Instead, the ALJ properly noted Dr.

6   Borgquist's lack of specialization in fibromyalgia as just one reason among many for discounting

7   that opinion.   "[T]he specialty of the physician providing the opinion" is "relevant to evaluating

8   any medical opinion." Orn, 495 F.3d at 631.[9]  Plaintiff has not cited authorities suggesting that

9   the ALJ may not discount a treating physician's opinion in favor of an examining physician's

10  opinion on grounds of lack of specialization *unless* the examining physician is a specialist

11  himself.  Further, the ALJ discounted Dr. Borgquist's opinion in part because Dr. Borgquist

12  failed to *refer* plaintiff to a specialist (AR 18), *not* solely because Dr. Borgquist was not a

13  specialist himself.[10]

14              4.     *Conservative Treatment*

15              Plaintiff concludes that "[f]rankly, it is unclear what evidence would have

16  satisfied" the ALJ, given that "Dr. Borgquist identified the number of trigger points, tried

17  increasing doses of medications, indicated that physical therapy was not successful, performed

18  lab work to rule out other conditions, reviewed MRI/CT scans to rule out other conditions, and

19  even explained why he was concluding that Ms. Moore suffered from fibromyalgia." (Pl.'s Mot.

20  for Summ. J. at 14.)  While plaintiff argues that the ALJ may not discount a treating physician's

---

21

22          [9] An ALJ may consider a medical source's specialty when deciding how much weight to give
    to that source's opinions.  20 C.F.R. § 404.1527(d)(5) (an ALJ will "generally give more weight to

23  the opinion of a specialist about medical issues related to his or her area of specialty than to the
    opinion of a source who is not a specialist"); Holohan v. Massanari, 246 F.3d 1195, 1202-03, n.2

24  (9th Cir. 2001) (citing 20 C.F.R. § 404.1527(d)(3), (d)(5)).

25          [10] While plaintiff argues that Dr. Borgquist did not refer plaintiff to a specialist because he
    knew she could not afford it, plaintiff does not identify any portion(s) of Dr. Borgquist's treatment

26  notes (or other documents) confirming that plaintiff's lack of funds specifically motivated Dr.
    Borquist's recommendations in any way.

opinion by pointing out "negatives," i.e., tests and treatments the physician did *not* order, plaintiff does not cite authorities in support of that argument. (Id. at 13-15). Indeed, authorities suggest that an ALJ may properly consider a physician's decision *not* to order certain treatments. See Tommasetti, 533 F.3d at 1041 (noting that a conservative treatment plan is a permissible basis for discounting testimony of all-disabling pain).[11]  Here, the ALJ discounted Dr. Borgquist's opinion in part because Dr. Borgquist did not refer plaintiff to a fibromyalgia specialist, did not refer plaintiff to a pain clinic, did not offer injections for plaintiff's pain, and, except for ordering lab work, did not conduct other diagnostic tests to rule out other causes of plaintiff's pain. (AR 17-18.)  In any event, these so-called "negatives," taken with plaintiff's less-than-credible testimony regarding pain, taken with plaintiff's failure to mention fibromyalgia to Dr. Duclair, taken with the fact that Dr. Duclair's examination of plaintiff did not reveal a significant number of painful areas or trigger points, all combine to confirm that the ALJ properly supported his decision to discount Dr. Borgquist's opinion.

5.    *Treating Physician's Suggested Functional Limitations*

The ALJ determined that objective medical findings did not support Dr. Borgquist's extreme assessment of plaintiff's functional abilities. (AR 18.)  The ALJ found that Dr. Borgquist "checked many boxes [of a form questionnaire] indicating that the claimant would have great limitations" but notes that the doctor pointed only to "fibromyalgia" and plaintiff's other diagnoses in broad support of those limitations. (AR 18; 416-23.)  Although plaintiff is correct that Dr. Borgquist examined plaintiff and identified her "trigger points," ordered and

_____

[11]   See also Rollins, 261 F.3d at 856 (holding that the ALJ properly rejected the treating physician's opinion because his treatment notes failed to present "the sort of description and recommendations one would expect to accompany a finding that [the claimant] was totally disabled under the [Social Security] Act," and because he recommended only "conservative course of treatment" such as avoiding "strenuous exercise"); Burch, 400 F.3d at 681 (ALJ properly discredited claimant's pain testimony for lack of consistent treatment, in that she "had not had any treatment for her back for about three or four months" including physical therapy, chiropractic services, a home exercise program or the suggestion of surgery, which showed that her pain was "not severe enough to motivate [her] to seek [these forms of] treatment").

1  reviewed her lab work, and reviewed MRI/CT scans, among other things (AR 13), the ALJ did

2  not err by finding that plaintiff's treatment records did not support the degree of functional

3  limitation Dr. Borgquist assessed.  Indeed, the ALJ's citation to records prepared by multiple

4  other acceptable medical sources contradicting Dr. Borgquist's extreme assessment of plaintiff's

5  functional limitations, such as the reports of examining physician Dr. Duclair, compellingly

6  support the ALJ's rejection of Dr. Borgquist's assessment.  (AR 17-18.)

7            6.    *Conclusion*

8            The ALJ gave Dr. Borgquist's opinion less weight than Dr. Duclair's opinion, and

9  at this procedural posture, the court need only determine whether the ALJ supported this decision

10 by specific, legitimate reasons grounded in substantial evidence.  As described above, the ALJ

11 gave various specific, legitimate reasons for discounting Dr. Borgquist's opinion, and as

12 discussed above, those reasons find support in the record.  Accordingly, it cannot be said that the

13 ALJ failed to provide specific, legitimate reasons for discounting Dr. Borgquist's opinions; nor

14 can it be said that the stated reasons are unsupported by substantial evidence.  See Lester, 81 F.3d

15 at 830; Valentine, 574 F.3d at 692; Tommasetti, 533 F.3d at 1041.  Accordingly, the ALJ did not

16 err in evaluating Dr. Borgquist's opinion.

17       B.    The ALJ Failed To Consider Panic Disorder, Agoraphobia, and Anxiety In
              Assessing Plaintiff's Impairments And Functional Limitations[12]
18

19            Plaintiff argues that the ALJ failed to "discuss or explain" his failure to find

20 "agoraphobia and anxiety disorder" (Pl.'s Mot. for Summ. J at 14) and "panic disorder with

21 agoraphobia" and "anxiety" to be medically determinable impairments.  (Id. at 18.)  Plaintiff also

22 argues that the ALJ failed to associate functional limitations with those conditions in assessing

23 plaintiff's RFC, and failed to include such limitations in the hypothetical posed to the vocational

24 _____

25       [12]  While the parties' briefs separately analyze plaintiff's arguments regarding plaintiff's
    potential mental impairments (panic disorder, agoraphobia, and anxiety) and the nature of the
    hypothetical that the ALJ posed to the vocational expert, the undersigned addresses these related
26 arguments together herein.

1  expert.  (Id. at 18-19.)  Plaintiff's arguments are well-taken.

2         At step two of the sequential evaluation, the ALJ determines whether the claimant

3  has a medically "severe" impairment or combination of impairments.[13]  See 20 C.F.R.

4  §§ 404.1520(a)(4)(ii); see also Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996) (citing

5  Bowen v. Yuckert, 482 U.S. 140-41 (1987)).  At the step two inquiry, "the ALJ must consider the

6  combined effect of all of the claimant's impairments on her ability to function, without regard to

7  whether each alone was sufficiently severe."  Smolen, 80 F.3d at 1290 (holding that, by

8  erroneously considering only plaintiff's "severe impairment" of scoliosis, "the ALJ ignored

9  substantial and undisputed evidence of Smolen's other impairments and failed to consider how

10  the *combination* of those impairments affected Smolen's ability to do basic work activities.")

11  (emphasis in original)).

12         Failing to adequately consider a combination of non-severe impairments at step

13  two impacts the ALJ's considerations of plaintiff's RFC and the step five analysis.  Smolen, 80

14  F.3d at 1290-91 ("Having found Smolen to suffer from only one 'severe' impairment at step two,

15  the ALJ necessarily failed to consider at step five how the combination of her other impairments

16  — and resulting incapacitating fatigue — affected her residual functional capacity to perform

17  work.)  In determining a claimant's RFC, the ALJ must consider "all" of the claimant's

18  impairments, "even those that are not severe."  Carmickle v. Comm'r Soc. Sec. Admin., 533 F.3d

19  1155, 1164 (9th Cir. 2008) ("Even though a non-severe 'impairment[ ] standing alone may not

20  significantly limit an individual's ability to do basic work activities, it may — when considered

21  with limitations or restrictions due to other impairments — be critical to the outcome of a

22  claim") (quoting SSR 96-8p)); Burch, 400 F.3d at 683-84 (quoting SSR 96-8p (1996)).

23

24         [13]  An impairment is severe when it significantly limits a claimant's "physical or mental
    ability to do basic work activities" and lasted or is expected to last "for a continuous period of at
25  least 12 months." See 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii), (c), 404.1521(a); accord 20 C.F.R.
    §§ 416.920(a)(4)(ii), (c), 416.909.  Basic work activities refer to "the abilities and aptitudes
26  necessary to do most jobs."

1   Relatedly, an ALJ's failure to account for all of a plaintiff's functional limitations within the

2   RFC assessment can result in an incomplete hypothetical posed to the vocational expert.  See

3   Flores v. Shalala, 49 F.3d 562, 570 (9th Cir. 1995) (a hypothetical question posed to a vocational

4   expert must "include all of the claimant's functional limitations, both physical and mental," and

5   it is error to exclude "significant probative evidence" from the hypothetical without explanation.)

6          1.      *The ALJ Did Not Discuss Panic Disorder, Agoraphobia, Or Anxiety —*
                   *Even Though He Gave "Great Weight" To Medical Opinions Diagnosing*
7                  *Plaintiff With These Impairments*

8          At step two, the ALJ found that plaintiff suffered "severe" impairments of

9   "degenerative disc disease of the lumbar spine, depression, and obesity."  (AR 14.)  The ALJ did

10  not specifically discuss or identify any "non severe" impairments at this step.  (Id.)  The ALJ did

11  not mention panic disorder, agoraphobia, or anxiety at this step.[14]  (Id.)

12         In assessing plaintiff's RFC in light of her mental impairments, the ALJ gave

13  "very little weight" to the opinion of plaintiff's treating psychiatrist, Dr. Champlin.  (AR 19.)

14  The ALJ noted that Dr. Champlin diagnosed plaintiff with a "combination of bipolar disorder,

15  posttraumatic stress disorder, and a panic disorder with agoraphobia."  (AR 19, 466.)  Dr.

16  Champlin opined that plaintiff was "permanently disabled" due to her childhood abuse.  (AR 19,

17  217.)  The ALJ discounted Dr. Champlin's opinion because that doctor did not substantiate his

18  conclusion that plaintiff was "permanently disabled" with "any comments regarding specific

19  functional limitations experienced by the claimant."  (AR 19.)  According to the ALJ, this failure,

20  combined with the fact that "claimant was able to work for many years" despite her abusive

21  history led the ALJ to give "very little weight" to Dr. Champlin's opinion.  (Id.)

22         The ALJ gave "great weight" to Dr. Goodman's assessment.  (Id.)  The ALJ

23  discussed Dr. Goodman's opinions and treatment notes, which described plaintiff's "alcohol

24  _____

25       [14]  The ALJ also did not discuss any of these impairments or functional limitations arising
    therefrom in relation to plaintiff's RFC (AR 19-20), or in connection with the hypothetical the ALJ
26  posed to the vocational expert.  (AR 21.)

dependence," "general anxiety disorder," "depression," "anxiety," and "anxiety disorder," among other mental impairments.  (AR 18-19.)  Dr. Goodman noted that plaintiff's "panic disorder" was in remission in October 2007, and that her "possible alcohol dependence" was in "early remission" at that time.  (AR 19, 268.)  Dr. Goodman opined that plaintiff had the equivalent of a "moderate difficulty in social, occupational, or school functioning."  (AR 19, 268 (giving plaintiff a Global Assessment of Functioning score of 58)[15].)

The ALJ also gave "great weight" to Dr. Ikawa's psychiatric review.  (AR 20, 335-45.)  The ALJ accepted Dr. Ikawa's opinion that plaintiff's affective disorder, anxiety related disorder, and substance addiction disorder result in "mild" restrictions of daily activities and "moderate deficiencies of concentration, persistence or pace."  (AR 20.)  The ALJ concluded that Dr. Ikawa's assessment was "consistent with a finding that the claimant is able to perform work requiring only simple instructions."  (Id.)

The ALJ also gave "great weight" to Dr. Castillo's July 2008 assessment of plaintiff's mental impairments and limitations therefrom.  (Id.)  The ALJ explained that Dr. Castillo, a psychiatrist, opined that plaintiff "was essentially normal other than [having a] depressed and anxious mood."  (Id.)  The ALJ also stated that Dr. Castillo had concluded that plaintiff "suffers from a major depressive disorder, posttraumatic stress disorder, and a panic disorder."  (AR 20, 328-31 (diagnosing plaintiff with "major depressive disorder," "post traumatic stress disorder," "panic disorder, with agoraphobia," and "alcohol abuse" with a Global Assessment of Functioning score of 59).)  The ALJ accepted Dr. Castillo's conclusion that plaintiff has "moderate difficulty in social, occupational, or school functioning" and "moderate limitations in the areas of completing detailed or complex tasks or concentrating in a least two-hour increments."  (AR 20, 328-31.)

---

[15]   See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 34 (4th ed.) ("DSM–IV").  A GAF score of 51–60 indicates "moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflict with peers or co-workers)."  Id. at 34.

As plaintiff argues, the ALJ did not "meaningfully analyze" several physicians' diagnoses of panic disorder, agoraphobia and/or anxiety.  (Pl.'s Mot. for Summ. J. at 17-18.) Instead, the ALJ gave "great weight" to several medical opinions diagnosing these mental impairments and describing functional limitations arising partially therefrom, but the ALJ never discussed these impairments, his findings regarding their respective severities, or whether his RFC assessment accounted for the functional limitations, if any, arising from these impairments (except for concluding that plaintiff is "mentally limited to work requiring simple instructions"). (AR 20.)

> 2.    *The ALJ Gave "Great Weight" To Medical Evidence Reflecting Plaintiff's Anxiety*

As to anxiety, the ALJ gave "great weight" to Dr. Garner's opinion, which discussed plaintiff's "*anxiety* and depression" as well as Dr. Garner's finding that plaintiff's "*generalized anxiety disorder*" had "significantly improved" back in October *2007*.  (AR 19 (citing AR 268) (emphasis added).)  However, the ALJ also gave "great weight" to Dr. Castillo's more recent *2008* opinion that plaintiff has an "*anxious* mood" and "posttraumatic stress disorder" giving rise to "moderate" functional limitations in completing complex tasks and concentrating in 2-hour increments.  (AR 20 (citing AR 328-31) (emphasis added).)  The ALJ also gave "great weight" to Dr. Ikawa's *2008* opinion, wherein Dr. Ikawa opined that plaintiff has an "*anxiety* related disorder," "*anxiety*," "ptsd [post traumatic stress disorder]" and "affective disorder" causing "moderate" functional limitations in concentration, persistence, or pace.  (AR 20 (citing AR 335-45) (emphasis added).)

> 3.    *The ALJ Gave "Great Weight" To Medical Evidence Reflecting Plaintiff's Panic Disorder And Agoraphobia*

As to panic disorder and agoraphobia, the ALJ gave "great weight" to Dr. Garner's opinion that plaintiff's "*panic disorder*" was in remission back in October *2007*.  (AR 19 (citing AR 268) (emphasis added).)  However, the ALJ also gave "great weight" to Dr.

Castillo's *2008* opinion, wherein Dr. Castillo opined that plaintiff has "*panic disorder with agoraphobia*" giving rise to "moderate" functional limitations in completing complex tasks and concentrating in 2-hour increments.  (AR 20 (citing AR 328-31) (emphasis added).)   The ALJ also gave "great weight" to Dr. Ikawa's *2008* opinion, wherein Dr. Ikawa opined that plaintiff has "*panic d/o*" causing "moderate" functional limitations in concentration, persistence, or pace. (AR 20 (citing AR 335-45) (emphasis added).)

4.      *The ALJ Did Not Address Whether He Believed Panic Disorder, Agoraphobia, And/Or Anxiety To Be Medically Determinable Impairments*

While the ALJ gave "little weight" to Dr. Champlin's opinion and "great weight" to the opinions of Dr. Ikawa and Dr. Castillo, *all three* of these physicians diagnosed plaintiff with panic disorder, agoraphobia, anxiety, or some combination thereof.[16]  (AR 466-67; 469-70; 473-74; 481-82; 485-86; 487-88, 490-92; 495-96 (Dr. Champlin diagnosed plaintiff with a combination of "bipolar disorder," "posttraumatic stress disorder," "panic disorder with agoraphobia," and/or "anxiety disorder"); AR 335-45 (Dr. Ikawa diagnosed plaintiff with "panic d/o" "anxiety related disorder," "anxiety," "ptsd [post traumatic stress disorder]" and "affective disorder" causing "moderate" functional limitations in concentration, persistence, or pace); AR 328-31 (Dr. Castillo diagnosed plaintiff with "major depressive disorder," "post traumatic stress disorder," "panic disorder, with agoraphobia," and "alcohol abuse" with a Global Assessment of Functioning score of 59, causing "moderate difficulty in social, occupational, or school

---

[16]    See e.g., Bustamante v. Massanari, 262 F.3d 949, 956 (9th Cir. 2001) (where "every psychiatrist or psychologist who examined" the plaintiff found "significant mental problems," and where the ALJ's RFC nonetheless provided that plaintiff could perform "basic" work activities involving "simple instructions," the Court of Appeals held that "the evidence as a whole overwhelmingly supports" plaintiff's claim that he suffers severe mental impairments and the ALJ erred by not so finding.); Ballesteros v. Astrue, No. CV 09-06372 SS, 2010 WL 3432442, at *3-9 (C.D. Cal. Aug. 30, 2010) (unpublished) (holding that the "ALJ selectively reviewed the evidence regarding [p]laintiff's mental impairments" and erred in not concluding that plaintiff had "severe" mental impairments at step two, as well as by not considering the impairments in assessing plaintiff's RFC, because "[e]ven if the ALJ had been correct that [p]laintiff's mental impairments were non-severe, he was still required to consider the limitations arising from those impairments in determining her RFC.")

1   functioning" and "moderate limitations in the areas of completing detailed or complex tasks or

2   concentrating in a least two-hour increments.").)

3          Inexplicably, the ALJ never discussed panic disorder, agoraphobia, or anxiety in

4   his decision, never described any of them as non-severe or severe, and, in short, never clearly

5   considered them.[17]  See e.g. Rodriguez v. Astrue, No. CV10-0511-PHX-DGC, 2010 WL

6   4684015 at *2-3 (D. Ariz. Nov. 12, 2010) (unpublished) (where the ALJ gave "substantial

7   weight" to the opinions of a certain physician,"[i]n the face of this endorsement," it was error to

8   fail to accept that physician's assessment of the plaintiff's "ability to do work-related activities"

9   without providing specific and legitimate reasons for doing so).  If the ALJ intended to *reject* the

10  above-described medical opinions to the extent they reflect diagnoses of panic disorder,

11  agoraphobia, and anxiety, he did not explain as much.   If the ALJ intended his classification of

12  "depression" as a severe impairment to encapsulate diagnoses of panic disorder, agoraphobia,

13  and anxiety, he did not explain as much.[18]  The ALJ erred by not explaining why he did not find

14  that plaintiff's panic disorder, agoraphobia, and anxiety were not medically determinable

15  impairments, let alone severe or non-severe impairments.

16  ////

17  ////

18  ────────────────────

19      [17]  Defendant argues that the ALJ properly assessed plaintiff's mental impairments, because
    he did not need to discuss anxiety, panic disorder, or agoraphobia after determining that plaintiff was
20  less than credible.  (Def.'s Opp'n & Cross-Motion for Summ. J. at 14-15.)  Defendant implies that,
    in discounting plaintiff's credibility, the ALJ also implicitly rejected all portions of medical opinions
21  arising from plaintiff's subjective reports of her symptoms.  (Id.)  However, defendant fails to
    address the fact that defendant specifically (and repeatedly) gave "great weight" to these opinions.
22  (AR 19-20.)  Notwithstanding his acceptance of *several* medical opinions reflecting these mental
    impairments, the ALJ never squarely addressed the impairments and limitations resulting therefrom.
23  The ALJ has not made it clear that he "considered" these mental impairments at step two or in
    assessing plaintiff's RFC.  Moreover, it is unclear that these physicians' diagnoses arose solely from
24  plaintiff's subjective reports of symptoms, although defendant assumes as much.

25      [18]  As plaintiff notes, the ALJ found "depression" to be a severe impairment, but "depression"
    does not necessarily encompass anxiety, panic disorder, and/or agoraphobia.  (Pl.'s Mot. for Summ.
26  J. at 17-18; Pl.'s Reply at 4.)

5.     *The ALJ's RFC Assessment Included A Limitation Regarding Following "Simple Instructions," But This Limitation Does Not Necessarily Account For Functional Limitations Arising From Panic Disorder, Agoraphobia, And/Or Anxiety, Such As A Moderately Limited Ability To "Concentrate"*

The ALJ never discussed whether plaintiff suffered from panic disorder, agoraphobia, and/or anxiety, so the ALJ never addressed whether plaintiff suffered any *functional limitations* arising in part therefrom.  Various physicians assessed plaintiff with "moderate" limitations in social functioning, but the ALJ's RFC assessment does not clearly reflect all of the "moderate" limitations reflected in the medical record.  (AR 20.)  Except for limiting plaintiff to work involving only "simple instructions," the ALJ never clearly brought these mental conditions to bear upon plaintiff's functional limitations.  (AR 20.)  Therefore, the ALJ did not include any of these mental impairments (or functional limitations arising in part therefrom) in his hypothetical to the vocational expert.  (AR 21.)

As discussed above, Dr. Castillo opined that plaintiff had "moderate" limitations in her ability to complete "detailed tasks" and, *separately*, that plaintiff had "moderate" limitations in her ability to "*concentrate* for at least two hour increments."  (AR 330 (emphasis added).)  Dr. Ikawa opined that plaintiff has "moderate" difficulties in "maintaining *concentration*, persistence, or pace."  (AR 339, 343 (emphasis added).)  However, the ALJ's RFC assessment did not express *any* limit on plaintiff's ability to "concentrate."  (AR 20.)  Instead, the ALJ's RFC assessment provides only for "work requiring simple instructions."  (AR 20.)

Plaintiff contends that a functional limitation regarding her ability to follow "simple instructions" does not necessarily incorporate "moderate" limitations in concentration that Dr. Castillo and Dr. Ikawa opined arise in part from, for instance, plaintiff's "panic disorder."  (AR 330, 339, 343.)  Defendant responds that a "simple instructions" limitation adequately incorporates "moderate" limitations on concentration.  (Def.'s Opp'n & Cross-Motion for Summ. J. at 16-17.)  Defendant's argument is not well-taken.

22

1    Having the ability to follow only "simple instructions" does not necessarily

2    require the ability to "concentrate" for any particular amount of time.  Defendant argues that the

3    case of Stubbs-Danielson v. Astrue stands for the proposition that a limitation to "simple routine

4    work adequately accommodate[s] a moderate limitation in pace," but Stubbs-Danielson is

5    factually distinguishable.[19]  (Def.'s Opp'n & Cross-Motion for Summ. J. at 16 (citing Stubbs-

6    Danielson v. Astrue, 539 F.3d 1169, 1171-74 (9th Cir. 2008).)  In Stubbs-Danielson, the ALJ's

7    RFC assessment provided that "the claimant retains the residual functional capacity to perform

8    simple, routine, repetitive sedentary work, requiring no interaction with the public."  Stubbs-

9    Danielson, 539 F.3d at 1173-74.  The Ninth Circuit Court of Appeals explained that "an ALJ's

10   assessment of a claimant adequately captures restrictions related to concentration, persistence, or

11   pace where the assessment is consistent with restrictions identified in the medical testimony."  Id.

12   at 1174 (citing  Howard v. Massanari, 255 F.3d 577, 582 (8th Cir. 2001); Smith v. Halter, 307

13   F.3d 377, 379 (6th Cir. 2001).)

14   First, unlike the RFC at issue in Stubbs-Danielson, where the ALJ's RFC reflected

15   mental/social limitations of "simple" work *as well as* "routine" and  "repetitive" work "requiring

16   no interaction with the public," here the ALJ's RFC assessment reflected *only* a limitation to

17   "work requiring simple instructions."  See Stubbs-Danielson, 539 F.3d at 1173-74.  The RFC

18   assessment in Stubbs-Danielson thus reflected many more mental/social limitations than the RFC

19   assessment in this case.  Accordingly, contrary to defendant's characterization, Stubbs-Danielson

20   does not suggest that a limitation to "simple" work *necessarily* accommodates a moderately

21   limited ability to concentrate in two-hour increments.  Moreover, in this case Dr. Castillo

22   _____

23   [19]   Defendant also cites authorities suggesting that a limitation to work with "simple
instructions" is consistent with "unskilled" work (Def.'s Opp'n & Cross-Motion for Summ. J. at 16-

24   17), however,  whether such consistency exists does not speak to whether the ALJ's RFC properly
reflected the mental  impairments and corresponding functional limitations described within the

25   medical opinions to which he afforded great weight.  In other words, whether "simple" work and
"unskilled" work are one in the same does not speak to the ALJ's obligation to consider the various

26   mental impairments reflected in the substantial evidence, as well as the functional limitations arising
therefrom.

1   *separately* characterized an ability to complete simple tasks and an ability to concentrate; he did

2   not characterize these abilities as one in the same.  (AR 330.)  A plain reading of the ALJ's RFC

3   assessment adopted Dr. Castillo's finding regarding simple task completion, but did not clearly

4   incorporate his finding regarding limits on concentration ability, and it cannot be said that the

5   ALJ's RFC assessment was "consistent with the restrictions identified in the medical testimony."

6   See Stubbs-Danielson, 539 F.3d at 1174.  The ALJ's RFC assessment did not clearly reflect *any*

7   limits on plaintiff's concentration abilities, notwithstanding the medical evidence suggesting such

8   limits.  Further, the ALJ's hypothetical to the vocational expert incorporated the ALJ's RFC

9   assessment (and its shortcomings), and did not add further restrictions pertaining to plaintiff's

10   concentration or social functioning.  (AR 20-21.)  Thus, it is possible that the vocational expert

11   considered plaintiff as having *no* limits on her concentration abilities.

12          6.      *Conclusion*

13          The ALJ's RFC assessment failed to account for moderate limitations in plaintiff's

14   ability to concentrate for two-hour increments.  See e.g., Ballesteros, 2010 WL 3432442, at *8-9

15   ("[w]hile the ALJ did take into account [p]laintiff's mild problems understanding, remembering,

16   and carrying out complex instructions, he completely disregarded substantial evidence in the

17   record that [p]laintiff suffers from frequent and disabling anxiety attacks.")  If the ALJ intended

18   "simple instructions" to encapsulate all functional limitations he believed to arise from anxiety,

19   panic disorder, and agoraphobia, he certainly did not explain as much.  Similarly, if the ALJ

20   believed that plaintiff's panic disorder, agoraphobia, and anxiety do not give rise to any functional

21   limitations, he did not explain as much.

22          Because "simple" work may nonetheless require prolonged concentration, it is not

23   "clear from the record that [the] ALJ's error was 'inconsequential to the ultimate nondisability

24   determination.'"  See Robbins, 466 F.3d at 885; Tommasetti, 533 F.3d at 1038.  Accordingly, the

25   undersigned cannot find that the ALJ's failure to consider panic disorder, agoraphobia, and

26   anxiety — and the functional limitations potentially arising therefrom — resulted in harmless

1   error.

2           Also, as described above, the ALJ did not  "consider" panic disorder, agoraphobia,

3   or anxiety in discussing severe and non-severe impairments at step two or in assessing plaintiff's

4   RFC.  See Carmickle, 533 F.3d at 1164.  The above-described medical evidence suggests that

5   plaintiff may have suffered medically determinable impairments of panic disorder, agoraphobia,

6   and anxiety, as well as "moderate" functional limitations (i.e., in an ability to concentrate for two

7   hours at a time) arising therefrom.  Cf. Burch, 400 F.3d at 684 (holding that the ALJ did not err in

8   assessing plaintiff's RFC because plaintiff failed to set forth evidence, and there was no evidence

9   in the record of functional limitations caused by plaintiff's obesity).  Accordingly, the ALJ erred

10  in failing to consider anxiety, panic disorder, and agoraphobia at step two, in assessing plaintiff's

11  RFC, and in crafting the hypothetical given to the vocational expert.

12          C.      Remand Is Appropriate

13          The decision of whether to remand for further proceedings or simply to award

14  benefits is within the court's discretion.  McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir.

15  1989).  Generally, the court should direct the award of benefits in cases where no useful purpose

16  would be served by further administrative proceedings.  Varney v. Sec'y of Health & Human

17  Servs., 859 F.2d 1396, 1399 (9th Cir. 1988).  The undersigned finds that the ALJ's step two and

18  RFC determinations were improper, because the ALJ did not consider panic disorder,

19  agoraphobia, or anxiety in discussing severe and non-severe impairments at step two or in

20  assessing plaintiff's RFC.  The undersigned also finds that the "simple instructions" component of

21  ALJ's RFC assessment does not necessarily account for limitations arising from plaintiff's panic

22  disorder, agoraphobia, or anxiety, and while the assessment reflects plaintiff's moderately limited

23  ability to perform complex tasks, such limitation does not necessarily account for plaintiff's

24  moderately limited ability to concentrate.

25          On remand, the ALJ must determine at step two whether plaintiff has severe or

26  non-severe mental impairments *other than* depression (such as panic disorder, agoraphobia, and

anxiety).[20]  In addition, the ALJ must also re-evaluate his RFC assessment and address whether any of the above-described mental impairments give rise to any functional limitations, and if so, the ALJ must determine the nature and extent of such limitations (such as a moderately limited ability to concentrate for two-hour increments), supporting such determinations with substantial evidence in the record.  In re-evaluating the RFC determination, the ALJ must consider the combined effects of all of plaintiff's impairments.  The ALJ must complete the five-step analysis so that this Court has adequate information in reviewing any decision for harmless error.

Because these findings may require taking additional testimony from a vocational expert, such as testimony regarding jobs that accommodate moderate limitations on one's ability to concentrate (and any other potential limitations arising from plaintiff's potential mental impairments discussed above), the undersigned concludes that remand is appropriate.  Although the undersigned understands the importance of expediting disability claims, Varney, 859 F.2d at 1401, remanding this case for further administrative proceedings will serve a useful purpose in the resolution of this case.

IV.   CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

1.   Plaintiff's motion for summary judgment (Pl.'s Mot. for Summ. J., Dkt.

---

[20] Such determination should follow the agency's own regulations for mental impairments. See Maier v. Comm'r of the Soc. Sec. Admin., 154 F.3d 913, 914-15 (9th Cir. 1998) (citing 20 C.F.R. § 416.920a) (per curiam).  First, the ALJ must determine the presence or absence of certain medical findings relevant to the plaintiff's ability to work.  20 C.F.R. § 416.920a(b)(1).  Second, when the plaintiff establishes these medical findings, the ALJ must rate the degree of functional loss resulting from the impairment by considering four areas of function: (a) activities of daily living; (b) social functioning; (c) concentration, persistence, or pace; and (d) episodes of decompensation.  20 C.F.R. § 416.920a(c)(2)-(4).  Third, after rating the degree of loss, the ALJ must determine whether the claimant has a severe mental impairment.  20 C.F.R. § 416.920a(d).  Fourth, when a mental impairment is found to be severe, the ALJ must determine if it meets or equals a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 416.920a(d)(2).  Finally, if a listing is not met, the ALJ must then assess the plaintiff's RFC, and the ALJ's decision "must incorporate the pertinent findings and conclusions" regarding the plaintiff's mental impairment, including "a specific finding as to the degree of limitation in each of the functional areas described in [§ 416.920a(c)(3) ]."  20 C.F.R. § 416.920a(d)(3), (e)(4).

1    Nos. 14-15) is granted in part;

2              2.      Defendant's cross-motion for summary judgment (Def.'s Opp'n & Cross-

3    Motion for Summ. J., Dkt. No. 18) is denied; and

4              3.      This case is remanded to the ALJ for further proceedings consistent with

5    this order pursuant to 42 U.S.C. § 405(g), sentence four.  The Clerk of Court is directed to enter a

6    separate judgment herein, as provided for under Rules 58 and 79(a) of the Federal Rules of Civil

7    Procedure.  See Shalala v. Schaefer, 509 U.S. 292, 296-97 (1993).

8              IT IS SO ORDERED.

9    DATED:  February 29, 2012

10

11                                        _____

12                                        KENDALL J. NEWMAN
                                          UNITED STATES MAGISTRATE JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26